2497 from the District of South Dakota, United States v. Kevin Mast. Good morning, Counsel. Good morning, Your Honors. This is Attorney Gary Lusk on behalf of Mr. Kevin Mast. Well, let's see now. I don't have Mr. Clapper, though. I guess I pinned the wrong... I'm here, Judge. Yeah, I pinned the wrong layer. That's where... No, I don't... I can't even find you on my list here of participants. You can tell how familiar I am with this stuff. Judge Benton, do you have Mr. Clapper? Yes. He is not... I can't find him on my list of participants. Well, Mr. Lystaco, go ahead. I think you're up first anyway. Thank you. Good morning, Your Honors. Again, my name is Gary Lusk. I'm an attorney representing Kevin Mast at all times in this matter. Appreciate the opportunity and appreciate your time to listen to our case. We have... There are extensive briefs in the matter. And if any of you have any questions, I'll be glad to answer those to the best of my ability. I think with the time I have, I would like to go to the issue of the standard that the District Court set out in the order. And that we believe applies subject to the Fish and Wildlife Service manual, which is that 7 CFR 12.2A is a controlling criteria for wetlands on this matter. And that criteria sets out for a wetland that three criterias must be met. That there must be hydric soil, hydrophytic waters or plants that are dependent. Yes, Your Honor. Well, opposing counsel says it isn't the controlling standard. It may be controlling in other matters, but not in determining the extent of a right-of-way easement. So what case do you have which adopts an easement context? Your argument that that regulation is controlling and if every element is not satisfied, we must reverse. I do admit that this is first impression. I'm not aware that it has been brought up. I brought it up in this case. I have worked in this field. I'm aware of that manual. I'm aware how Fish and Wildlife uses it. That there is case law in this circuit that allows that when an agency relies on a manual and makes it and imposes that on the employees of that agency that controls. And the district court judge brought that up in her order. She went over those factors and that's on page seven and eight of her order. And she set out those three criteria and there was simply no evidence in that. That was admitted in the case as to the soil, the type of vegetation specifically that these are hydrophytic or the hydrology. And that's the overall issue with these easements. They're a moving target with the government. They have been in these cases for landowners, even employees of Fish and Wildlife, how to ascertain what the criteria is. And in this particular case, the judge did set that out. We believe that she set that out in her order for a reason. The government argues back that it was just mentioned it wasn't a holding in the case. I mean, it's one of the elements, element number two, that the judge sets that out and goes over that. Even if that's not the controlling factor, the government does have the burden to show that the number of acres in the easement that is being held or controlled in the government's view by the easement cannot be over the summary acreage, which was 33 acres. This easement is in two separate parcels. Mr. Maskell and the one in section 30. Section 19 was a different easement. There's numerous wetlands on these. They never defined the number of acres. And that's their burden. And they didn't specify what they were. And the one wetland and it's in the government's brief. They set out what was the working. This is 33 acre concept. I don't remember reading that in the briefs. Is that the number of acres and defined in the in the easement or what? Where did that come from? I believe that is set out in the briefs. But on the easement summary sheet, which was put into evidence at the district court. It indicated on the summary summary acres that there was 33 acres in these in this easement 80 X one. And that was two parcels. One. I thought the easement was for small wetland or piehole areas suitable for use as waterfowl production areas. That doesn't have an acreage limitation to it. It does not. I believe Joe Hanson set out that the government is held to the number of acres they paid for. So they bought those acres, 33 acres. That's what they got. They didn't buy more than that. And they're set out on this. Are you getting that from testimony? This is a doc. Primarily a documentary issue. It is your honor. So as you say, it's a moving target. There may have been 33 acres in 1973. There may be 36 and a half or 28 and a half today. How does that affect the legal issues? Well, the government in Johansson that this court set out in Johansson that the government's limited to the number of acres in the summary acre. If there isn't a contemporaneously prepared map of this ease with the easement. And in this case, this is one of those earlier easements before 1976. When the Fish and Wildlife Service wasn't having or wasn't producing a map. They come up with a summary acreage and it limits the number of acres. And then the number, the wetland three, which is the predominant wetland. The defense set out in that trial court that that wetland was of 17.3 acres. So over half of those. The government in 2010 Fish and Wildlife, when they produced this map that everyone relied on on the government's testimony. There was 24.8 acres. And this wetland three had 17.3. They're claiming they have then control of the other six wetlands on this parcel. And they did not even submit any evidence as to the number of acres of wetlands on the other portion of this same easement section 19. And so the government didn't meet its initial burden. Of the number of acres it controls, and they want to spread these out without any basis to do so in these other six wetlands in the case. I did reserve four minutes of time. I'm glad to answer any of the questions. The clock indicates to me slight land or four minutes, so I will reserve the rest of my time. I do have one question. I think three of the arguments in your brief are evidentiary. And yet the preamble says the case was a bench trial on a stipulated fact record. So where do we get, you say one argument is that it was improper to exclude the manual definitions. How does the district court exclude something when it's tried on a stipulated facts? I don't understand. I appreciate that, your honor. The stipulation was that the first trial, so this was jury tried. It came before this court. This court vacated that. It was brought back. That's irrelevant. This is the bench trial. No, I understand. This was a new trial. You're just saying those were issues I had before that I'd like to win now? No, your honor. The stipulation with the district court and the government agreed to this. That all matters in the first trial came in as if that was the trial. With all earlier objections, all rulings of the court. I can find that in the court register. No, that explains it. One other question that may be significant. On the restoration argument. Pardon? I believe you're referring to the restoration argument. The sentencing issue. Issue number six. The government says it's reviewed on plain error. The district court opinion didn't discuss it. And the limitation is found in a special condition of supervised release. So is this not plain error review? And if not, why not? Well, there's a case. How did it come? How did it come up in the district court? It came up in the district court as the time of sentencing. And it was an issue at sentencing. And I will admit at sentencing, the restoration, the judge had stayed. Whatever restoration would be required after a year after this appeal is final. If we did appeal, which we did do. So we cite case law as to, in this case, the judge found not all the elements were met for wetland number five. It's just regardless of the review standard, the court found Kevin Mask not guilty of that wetland, violating that wetland. And yet the court ordered that it was restored. That was our issue with the restoration. And that is that just with the one wetland. In the district court, was it presented and not ruled on? Or presented and ruled on? That argument. It was not ruled on. And so U.S. frog is the... Well, can you cite me to the sentencing record where the issue was preserved before the district court? I cannot, Your Honor. Okay. Okay. Mr. Planker. Thank you. It pleased the court and counsel. On behalf of the United States, we are asking this court to affirm the conviction of Mr. Mask for violating wetlands statute, violating the criminal conviction based on the court trial. As the court's aware, this matter was on appeal before to this court, and it was sent back based on an improper jury instruction. This court determined that the burden of proof for the lesser offense should have an element of negligence to it. And so this... Well, excuse me, but we're short of time, and two members of the panel were participants in the prior appeal. I don't see why you have to tell us what we did before. Sure. So the reason we're asking this court to uphold the district court's decision is, first, they met the burden of proof. The government met its burden of proof by all of the standards this court has established in all of its prior cases. And so that's why I bring it up, is the new standard was negligence, and the government established that at the court trial based on the record that was presented. I don't think there's a mens re argument issue on appeal before us. Why are we talking about that? You know, I agree, Your Honor, that this shouldn't even be an issue. You're making it an issue. It wasn't argued, and it wasn't briefed. I think the issues raised by the defendant on trying to interject these additional regulations aren't... There's no authority for that whatsoever, and so it shouldn't be considered on whether or not the district court's conviction of mass should be upheld. With that, I'd move on to the evidentiary issues. Again, those were... No, no, no. Wait a minute. Wait a minute. The first issue is still the most important. How did you prove, did you properly prove the wetlands that were impaired? That's the argument. That's not a question of was he negligent or not. That's a substantive element of the case you were required to prove, and he says you didn't prove it. Why aren't we hearing about that? That's the most important issue this morning. The wetland areas on the property were damaged. That's the burden of proof for the government to show. The evidence clearly shows that. What the defense is trying to raise is... Are you saying you don't have to prove any wetlands, just the language in the easement that says wetlands, and therefore obviously there was some, and all we have to do is prove drainage damage? Well, I think the problem we get into, Your Honor, is that we use the term wetlands to mean other things, and what this court has said in the past... No, I use it in the language of the easement. Well, the easement says... I know what it says. I know what it says. How did you prove it? We proved that there were ponds, marshes, sloughs, swales, swamps, or potholes, or other surface water that occurred on the land at the time the easement was executed in 1973. We proved that with aerial photographs taken prior to the easement in 1973. Testimony from Mike Esty with U.S. Fish and Wildlife Service that has experience reviewing photographs. We also had evidence from Mike Esty that showed that wetland areas persist over time. That's why those photographs both before and after the easement were entered into are important. And his testimony was, as the district court found, all of the areas claimed by the government were protected by the easement existed at the time of the easement. And that's the proof that the government relies on in asking this court to uphold the district court's decision. Counsel, what's your response to the argument that since the agency has used the elements of the rigs over and over down through the years, you should have to prove your case in a manner consistent with those elements? That's the core argument, and all you say is, well, our cases have only dealt with that rig in another context. That doesn't get at the substance of the argument. Well, I think there's two parts to this. This court has held that when you have an easement, that's a contract. That's the law that the parties are limited to. Whether or not the other issue on the manual being used, it has no application to an easement setting. They haven't shown that it does. Their reference was to the criminal statute. If you look at the criminal statute, it has applications where it's not limited to easements. It's to property of the federal government. There are all kinds of different manners and means that the federal government holds property, and its interest may be protected. Easements are just a small slice and portion of that. I'm sorry, Judge, I don't know where I'm at on my time. No, you answered my question. I am a little concerned about the restoration issue. We don't get any light shed in the briefs about how it came up and the basis for whatever implied ruling was made. Well, I take that back. There's a factual basis in your brief. I understand, and I take it the legal argument is that if drainage from 5 is causing damage elsewhere, even though 5 itself wasn't found to have been part of the violation, it can be part of the remedy. If I've stated your position correctly, what's the supporting support for it? Well, the testimony on where the drain tile was installed on the property clearly shows that drain tile was installed at least around or near that area 5. I understand the facts. I asked you for legal authority for the sentencing. Restitution. Restoration. Restoration of the property? This court has allowed that before. No, the argument is the remedy exceeded the offense. And for loss and restitution awards, I have upheld that argument in numerous cases, and so I want to know why it doesn't apply here. The district court judge was making the distinction about surface damage and subsurface damage. The subsurface damage to the wetland area is still damage, and so it's not outside of the court's ability to order restoration. It's not outside the conviction. That's the government's argument, Your Honor. And it's supported by the district court's memorandum decision. Do you have a property crime case with a similar restitution or restoration issue, which you can cite as authority? I wish I did, Judge. I don't know of any other property crimes that are happening below the surface of the land. Well, except that you have a lot of crimes in one place that cause damage in other places. Environmental crimes, for example. It would seem to me this analogous issue would have arisen elsewhere, and I assume you would have looked for it, and so I was hoping you could help me find them. Yeah, I'm sorry. I don't have that for you, Your Honor. Okay. Now, I just want to know what I have to look. Sure. You know, just factually, there is damage to that particular wetland area based on the subsurface drainage, and that's a violation. So, you know, it's not outside the court's authority to order restoration to that damaged property. It's part of the conviction. That's all I have, unless the court has questions about other areas. No. Very good. Mr. Mystico, for rebuttal. Thank you, Your Honor. I'll give you a minute. It says... I appreciate that. Thank you. I'll be brief. As to your question, Judge Loken, on where in the record there was an issue brought up by defense on the restoration, on the sentencing transcript at pages 8 and 9, we did object to the restoration order. As to Mr. Clapper's argument that it's in the province of the district court to order restoration for a crime, and I don't know how anybody can read the sentencing order or the court's order after the court trial to say anything other than she found the government did not meet every element of the required elements to show a crime, and so it is outside the conviction. As to the underlying issue, which is this easement and what's covered and what's a standard, Johansson requires definiteness to be definite in real property contracts, and it does not apply to future fluctuating or future wetlands after the time of the easement. And every one of the aerial photos used by the government in their 2010 map and at the trial were aerial photos that occurred after the easement was executed. Only one was prior in the 2010 map that the government relied at over and over at the trial. Every witness relied on that map, and all of those aerial photos were after. They presented no evidence that these were not after fluctuating or increased wetlands. There was at least some evidence that additional water was being drained onto Mr. Mass' property. Other than that, I'll answer any questions, but I think my time has passed. Thank you. Very good. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued. Unusual issues, and we'll take it under advisory.